## GUISE v. STATE, USE, &c.

EXEMPTION: *Defective schedule of personal property.*

A schedule of property which does not claim it or any portion of it as exempt from execution, nor shows that the party filing it is a resident of the state, is fatally defective and will not protect the property from sale under execution.

APPEAL from *White* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

26–R

The appellant *pro se.*

1.   The court erred in rendering judgment for double the amount of the verdict.   The *whole* question of damages was submitted to the jury and the amount was a matter for them to determine.   *Sec. 2461 Gantt's Dig.*

The property levied on and sold was described in the schedule.   It may or may not have grown out of the property described in the schedule, or resulted from it, but it had undergone material change and was different in description.   There was a material *change of circumstances* and a new schedule should have been filed.   *28 Ark., 485; 37 Id., 283.*

The right of exemption appertains only to residents of the state, and neither the schedule nor the pleadings show that Gray was a resident, or head of a family.   *34 Ark., 111.*

*W. R. Coody,* for appellee.

1.   The complaint was good and the judgment proper. *23 Ark., 225; Ib., 101; Gantt's Dig., secs. 4390-1.*

2.   Defendant in execution need not schedule but once against successive executions upon the same judgment. *Thompson on Exemptions, etc., sec. 825.*   Exemption statutes are remedial and liberally construed.   *38 Ark., 112.*

3.   A change of the character of the property in its ordinary use, as gathering crops, making meat of hogs, etc., does not necessitate a new schedule.   *Thompson on Exemptions, sec. 815 to 817.*

EAKIN, J.   This is an action commenced in the circuit court by Gray, in the name of the state, against Guise, a constable, on his official bond.   It is founded on the act of March 28, 1871, concerning exemptions, being *section 2641 of Gantt's Digest.*   This act provides that the officer levying upon goods allowed as exempt, after a schedule should have

been filed, and supersedeas issued, could take no indemnifying bond, and proceed with the sale of any property in the schedule. It made it a high misdemeanor in him to do so, punishable by a fine of from one hundred to five hundred dollars, and by imprisonment for a term not less than one nor more than two months. "And furthermore," provided that he should "be liable on his official bond to the defendant in twice the amount of damages, by such defendant incurred." (*Gantt's Dig.*, sec. *2641*.) The provisions regarding exemptions from execution were changed by the constitution of 1874. The benefit was still limited to residents of the state, but was diminished in amount, and a distinction as to amount was made in favor of those who were married or heads of families. By act of March 9, 1877, some of the provisions of the former act of 1871 to carry into effect the constitutional right of exemption were changed. Instead as formerly, of making a schedule only of the property claimed as exempt, the claimant was required to file one on oath of *all* his property, specifying the particular property he might desire to retain as exempt. Upon this the clerk or justice was required to issue a supersedeas, staying any further proceedings against the property in such schedule *described and claimed as exempted*. The provisions of section 2641 were not repealed.

The complaint sets forth the official character of the defendant and the execution of his official bond, in the penalty of five hundred dollars. It proceeds to state that in 1881 he held an execution against plaintiff issued by a justice of the peace, in favor of J. L. West, under which he levied upon the following personal property of plaintiff, to-wit: One hundred and fifty pounds of bacon, eight bushels of corn, and forty bushels of cotton seed, the whole value of all of which was thirty-four dollars and seventy-five cents. That on the first of July plaintiff filed before the justice a schedule of all his personal property, which he

claimed as exempt, including that levied on, and that he obtained a supersedeas and the property was released. That afterwards, in 1882, defendant levied another execution upon the same property, upon the same judgment; took from West an indemnifying bond, and sold it against the objections of plaintiff, the justice having refused to allow him to file a schedule on the second levy. He alleges that he has been damaged in the sum of thirty-four dollars and seventy-five cents, and prays judgment for double such damage, and also for the sum of five hundred dollars, the penalty of the constable's bond. A general demurrer to this complaint was overruled, and the defendant answered admitting his official character, the execution of his official bond, the sale of the bacon, corn and cotton seed, and the taking of the indemnifying bond from the plaintiff in the execution. He says, however, in regard to this property, that no supersedeas bond had ever been issued; claiming the fact to be, that a former levy had been made upon a spring wagon and a cow and calf, which had been claimed as exempt, and had been given up upon supersedeas.

The evidence as shown by bill of exceptions discloses substantially the following case. The judgment in favor of Wert was for eight or nine dollars, rendered early in 1881. The execution was levied on a spring wagon, and a cow and calf.

EXEMP- TION.

Defec- tion sched ule of per- sonal property.

Gray filed before the justice a schedule of all his property, amounting to his own estimate of values, to $445.25. It is simply a sworn schedule. The property is not claimed as exempt, either altogether or any particular part. It included the spring wagon, cow and calf, which had been levied on, and also other things, amongst which was some hogs, "nine acres of corn," and "four acres of cotton." Thereupon the justice issued a supersedeas, which was obeyed, commanding him to desist from any sale, or further proceedings, regarding the wagon, cow and calf. They

were returned to plaintiff Gray. Early in 1882, another execution was issued, which was levied on the bacon, corn and cotton seed, which were shown to be the products of the hogs and crops scheduled. The plaintiff applied for no supersedeas, but still claimed the property as exempt. The property was never taken from the possession of plaintiff Gray. At the sale it was purchased by his father, who left it with him. The whole brought $22.50.

The court upon its own motion, and without objection, instructed the jury that a schedule for exemption, once filed, was good against subsequent executions on the same judgment; that the schedule protected the property in its changed condition; and that the measure of damage was the value of the property sold. The jury found for the plaintiff, and fixed damages at $31.50. The judgment was for double this sum and costs.

The grounds of the motion for a new trial are, 1st, error in instructions. 2nd, excess of damages in the verdict, and in the rendition of the verdict. 3d, that of jurisdiction. 4th, because the verdict is without evidence, and contrary to law. These were overruled and Guise appeals.

Waiving all other questions, it suffices to say that the verdict was without sufficient evidence to support it. No proper schedule, no claim of the property exempt, had ever been made. Nor does it in any manner appear that the plaintiff was entitled to any. The transcript does not show whether he was a resident of the State, nor does it show whether he was married or the head of a family. It does not show that he designated any of the property as claimed under the exemption law. The schedule is fatally defective.

Reversed and remanded.